This is People v. DeMonte Bolden, 17-1479. Good morning. As Krista knows, we're the 1st District, 2nd Division, which in this case is Justice Aurelia Puchinski, myself, Justice Smith, and Justice Lavin. Our procedure is as follows. First, the appellant will make his presentation for 10 or 15 minutes, and then we will ask questions. We will not interrupt you. Then the appellee will have her opportunity, and at the end of that, we'll ask questions. Then the appellant gets his final shot. With that in mind, you guys may proceed. May it please the Court. Good morning, Your Honors Counsel. My name is Chris Bendick from the Office of the State Appellate Defender, and I represent the appellant, DeMonte Bolden. My intention is to address each issue in the briefs, beginning with the ineffective assistance of trial counsel claims. DeMonte Bolden's post-conviction petition made a substantial showing of constitutional violations where trial counsel failed to investigate an alibi witness who would have testified DeMonte was with her during the charged events, and counsel failed to investigate prior instances of arrestee abuse by Detective Sandoval, who was one of two officers primarily responsible for eliciting DeMonte's custodial statement. Each claim warrants an evidentiary hearing. The well-known Strickland standard controls the claims. At this stage of post-conviction proceedings, DeMonte must make a substantial showing of deficient performance and prejudice from that substandard performance. As the State conceded below, counsel provided deficient performance in failing to investigate Andrea Bayston, an alibi witness. With that concession, and unless there are any questions later about the deficient performance as to Andrea, I will focus on prejudice from that failure. Because DeMonte pleaded guilty, the prejudice standard of People v. Hall governs. To establish prejudice, DeMonte needs to make a substantial showing of a claim of innocence or plausible defense that could have been presented had the case proceeded to trial. Here, DeMonte's alibi defense meets that standard via his and Andrea's affidavits. And by filing a motion to dismiss, the State assumed the truth of Andrea's and DeMonte's affidavits. The State on appeal attempts to challenge the veracity of those affidavits. But as the Supreme Court stated in People v. Sanders, credibility is not an issue at the second stage of post-conviction proceedings. Credibility determinations may be only made at a third stage evidentiary hearing. DeMonte's alibi is a plausible defense he could have raised had he gone to trial. The State makes several arguments as to why no prejudice occurred here, but none of them rebut the substantial showing of prejudice DeMonte has made. DeMonte has made a substantial showing on that violation. And the amended petition also made a substantial showing that counsel provided deficient performance at the motion to suppress DeMonte's custodial statement. And that performance prejudiced DeMonte. The State does not contest Detective Sandoval's history of abusing arrestees. The two prior instances of 1987 versus Kenneth Mitchell and the February 1997 incidents with an unnamed juvenile, which resulted in Detective Sandoval being suspended for 30 days due to disrespect or maltreatment of any person while on or off duty and making a false report written or oral. Nor does the State argue that trial counsel investigated or learned of Sandoval's history. Now addressing the deficient performance prong of DeMonte's claim, the State asserts Sandoval's prior instances of physical and mental abuse would not have been admissible at the hearing as they were too remote and or dissimilar from DeMonte's allegations. Yet the State cites no authority supporting its position. And in fact, in People v. Reyes, this court found a pattern of prior abuse for 5, 12, and 15 years before the instant abuse. Here it's 8 and 18 years. Evidence of past abuse by interrogating officers is relevant, even if the officer who was accused of having been abusive previously merely acquiesced to fellow officer abuse this time. That's seen in People v. Wuerl, Jakes, and People v. Harris recently. Further, Sandoval did not just merely stand by. DeMonte alleges Sandoval verbally abused him during the two-day interrogation, similar to what Sandoval and the other officers did to Mitchell in 1987 and the juvenile in 1997 that he pistol-whipped and then threatened to file false charges upon unless that juvenile provided information on guns and, I believe, kidnappings in the area, or carjackings, excuse me, in the area. The issue at this stage of post-conviction proceedings regarding prejudice is not whether the confession itself was voluntary, but whether the outcome of the suppression hearing likely would have differed if the officers who denied harming the defendant had been subject to impeachment based on evidence revealing a pattern of abusive tactics employed toward other suspects. Simply put, the state has provided this court with no authority demonstrating why DeMonte, at this stage, has not made a substantial showing of prejudice from trial counsel's failure to investigate. Finally, turning to the state's argument that DeMonte was culpably negligent for his filing in July 2012, they make no argument that the circuit court was correct when it stated DeMonte waited 18 months after the due date to talk to an inmate and thereby discover the MSR claim. DeMonte learned of the MSR claim in January 2011 after talking to an inmate. He then requested his records, received those in the spring of 2011, and began drafting his petition. Thus, this court need not defer to any factual findings by the circuit court on this subject as they were manifestly erroneous. DeMonte's 2017 affidavit further details his conversations with Mr. Freeman. What the case law demonstrates is that DeMonte, at this stage, has made a substantial showing that he is not culpably negligent. This court in Upshaw put it sagely when, while the state will have an opportunity at an evidentiary hearing to rebut those facts, this court must accept them as true. And I also direct this court to the People v. Willborn decision, which found a lack of culpable negligence where the claim was filed 43 months after it was due and 16 months after it was discovered. Very similar to this case, Your Honor. DeMonte sits in prison serving a nearly three decades long prison term, even though his trial counsel failed to provide him with constitutionally effective assistance. Based upon the pleadings, DeMonte has made a substantial showing of counsel's ineffectiveness and should be remanded on both claims for an evidentiary hearing. Quickly turning to the Rule 651C noncompliance issue, the state does not dispute that DeMonte's plea did not explicitly link MSR to a specifically pled sentence of 28 years. In fact, here's the only mention of mandatory supervised release. The court said, all right, on a first degree murder charge, you can be sentenced to a penitentiary anywhere from a range of a minimum of 20 years to a maximum of 60 years with three years mandatory supervised release. There's no probation. There's no conditional discharge. There's no periodic imprisonment and you could be fined up to $25,000. Do you understand that? Which DeMonte said he did. There was no further mention of MSR at the hearing, nor was there any mention of MSR on the order of commitment. In People v. Boykins, the sentencing or the guilty plea court stated, upon your release from the penitentiary, there is a period of three years of mandatory supervised release, sometimes referred to as parole. And in People v. Company and People v. Daniels, the linking of MSR only to the maximum possible term was noncompliant with Rule 401, and it was a violation of due process in both those cases. Now, Boykins does not overturn Daniels or Company, and in fact, they're all of one like mind. A careful reading of those cases show that both require that MSR must be expressly linked somehow to the sentence that defendant will receive under the negotiated plea. It is just that there is more than one way to communicate such linking. As the appellate court in Daniels stated, ideally, the court should have specifically advised the defendant that the term of MSR is part of the sentence to which the defendant agreed. Thus, Daniels and Boykins are of one mind. And by abandoning this meritorious due process claim and causing it to be forfeited, post-conviction counsel provided unreasonable assistance. Because counsel provided unreasonable assistance, the court should remand for further second stage proceedings on that claim. If your honors have no further questions, we ask for relief requested in the briefs, and I'm willing to answer any questions you have on any of those issues. I just have a couple. I mean, we're dealing with perhaps the most experienced trial judge in the criminal court system in the County of Cook in Judge Gawne. And in the language that you yourself quoted, he talked about the range of a minimum of 20 years to a maximum of 60 years with three years of mandatory supervised release. He didn't speak in a way that would tie it only to the 60 years. He tied it to the exact framing of what the possible sentencing could be, 20 to 60, and said that there would be three years of mandatory supervised release. I don't see where you're coming from on that. Your Honor, I just disagree that it was linking the MSR here to the range of sentence. It is only linking it to the maximum, and this is just like Daniels and Burns, where the appellate court has found that it is not substantial compliance with Rule 401 to do exactly what happened here. Now, if it was more like the Boykins situation, and in paragraphs 20 to 22 of Boykins, and specifically 17 in Boykins, where the court said, upon your release from the penitentiary, there is a period of three years mandatory supervised release, where any normal person would, in that situation, know, after I get out of prison, I'm going to have to do MSR. Here, it's not on the order of commitment. It's not announced when the 28 years is imposed at the end of the guilty plea hearing, and it is only explicitly linked here to the maximum term. So, Your Honor, I do not agree that it was clear to any reasonable person in DeMonte's situation that MSR would apply to a specifically negotiated plea of 28 years. But you talk about Boykins, and Boykins found that an ordinary person in defendant circumstances would understand, and now I'm quoting, any term he served in prison would be followed by a three-year period of MSR where the court informed the defendant of the sentencing range before stating that after his release, there's a period of three years of mandatory supervised release. And it's not like the trial judge here gave him the maximum. He gave him a lot closer to the minimum and specifically said there would be three years of MSR. I think this is right in line with Boykins. And that's where we disagree, right? Yeah, I mean, I can only interpret it the way that it reads in the sentence that it's a range of a minimum of 20 years to a maximum of 60 years with three years mandatory supervised release. With three years mandatory supervised release is not in relation to any prison sentence or, in fact, the specific 28 years here. Again, I think Burns and Daniels make this clear. Boykins only said that there's no bright line rule. You know, there's many ways to skin a cat. I hate that analogy because I love cats. But here, the MSR is only linked to the maximum possible term, which, as you just said, Your Honor, DeMonte did not receive the maximum term of 60 years. All right. Well, you're a terrific lawyer. And as always, you're defending your client's position. Let me just bring up one last aspect as to the alibi. He told his trial counsel about this potential alibi. He knew about his potential alibi when he pled guilty. And the trial counsel never contacted Baston. The pleadings filed in the trial court and the briefs filed in this court have not provided any reason why he could not have filed a timely petition. So what do we do with that? I mean, it's not like this is late discovered information. Your Honor, you're speaking about a lack of culpable negligence as to or. In regards to culpable negligence, the statute and recently in People v. Johnson made it clear that it's the petition at large, not based on claim by claim culpable negligence. And here, the failure to investigate claim is based on something trial counsel should have done and didn't do. Regarding culpable negligence as to the filing of the original petition, it is explained in the affidavits that. He didn't discover the basis for the claim until January of 2011. The state, by filing a motion to dismiss, has assumed the truth of those affidavits and claims and must accept those on appeal. This court should do what it did in Upshaw. There's a time and a place for the state to debate the credibility of DeMont's allegations in his affidavit and petition regarding culpable negligence. Contest that at an evidentiary hearing. No further questions. I just have one in terms of the untimeliness.  We can't hear you, Aurelia. I will speak up because I've got my sound at 100. The original pro se post conviction petition says that in January of 2011 DeMonte was made aware of the MSR claim. I'm guessing that's when he talked to the other prisoner. And he apparently requested the transcript of the sentencing hearing. It's a little confusing because it says that he at one point it says he got the sentencing transfer on March 15th of 2011. But in another. So that's three months after he learned of it. I'm just trying to figure out if there was a problem with the clerk's office getting him the transcript because there's nothing that I can see. Once did the transcript. And the judge even commented that there were problems with the clerk's office so I just I just want to clarify in my own mind that there wasn't a clerk related problem here. In regards to the pro se petition, I believe it's on page 67 of the common law record that he filed a motion for says common law record, which was filed on March 3rd, 2011. And I believe in other parts of the pro se petition. He then says he received it shortly thereafter, sometime in the spring. Okay, so that's not a clerk problem. I can only describe what's in the stats what's in the petition so I think at this basis we have to go with what's in the petition and the affidavits, but under the case law, especially Wilburn demonstrates that you know he was drafting his petition thereafter, and in Wilburn, and in the other cases cited in the briefs, similar times has been found to be a lack of culpable negligence, at least at this especially at this stage where we haven't had an evidentiary hearing to hear demands further or from Mr. Freeman, etc. Margaret you may. Thank you. Please support I'm Assistant State's Attorney Margaret Smith representing the people of the state of Illinois. This court should affirm the dismissal of the post conviction petition, because petitioner has failed to establish a lack of culpable negligence for his untimely filing of the petition, where the deadline for the filing was in December of 2010 petitioner talked to a fellow inmate in January 2011 and petitioner did not file his pro se petition until July, 2012. Therefore petitioner filed his petition 17 months after he spoke with the inmate, and that was 17 months after he spoke to the inmate and 18 months after the petition was do petitioners excuse that he offers that he spoke to the fellow inmate. He does not rise to the establishing a lack of culpable negligence, because he fails to explain why it took 17 months after he spoke to the inmate. Speaking of it. He just does not demonstrate why it took 17 months after he learned of his claim to file the petition. This. And just to speak to counsel's reference to the trial court, saying that the timing of the petition. It. The quarter first to 17 months after I believe it was, he spoke to the end. It's clear from the record that the that petitioner failed to file the petition for 17 months after he learned of his claim. So his excuse of talking to an inmate does not establish a lack of culpable negligence, and the case. The petitioner relies on people versus Upshaw is highly distinguishable from this case. In that case, the petitioner filed the petition late, but this court. And let me just say the other cases that petition relies on are from other districts and the rely on race, excuse me, recent changes in case law to explain the lack of culpable negligence for the petitioners untimely filing. That is not what happened here. And people versus Upshaw. The other case they rely on is a case in which the court found three different factors that were relevant to it in terms of lack of a couple of negligence that the petitioner limited access to the law library and petitioner started to work on this petition. Shortly within day a day of his PLA being denied, and he was unable to retrieve his last Trial records for those three different reasons that the court found that there was a lack of culpable negligence. We have nothing like this as the trial court. Referred to in its ruling to establish defendants petitioners lack of culpable negligence so petitioners fail it failed to establish a lack of couple negligence in this instance. Petitioners also failed to make a substantial showing that plea council was ineffective for failing to investigate the alibi witness because petitioner has failed to make a substantial showing a prejudice where Petition was offered a good plea deal, get the opportunity to plead guilty to felony murder in exchange for 28 years in the Illinois Department of Corrections. That's 32 years below the maximum Or petitioner could have taken the gamble proceeded to trial, knowing that his inculpatory statement would have come in. And knowing there was a high likelihood as the trial court stated that the people would have called at least one of the four other individuals that he planned the robbery with and he executed the robbery with That one at least one of those four people would be called by the people to testify at the trial. All four of those individuals gave inculpatory statements and some of those individuals even stated that petitioner was the shooter. Petitioner chose not to take the gamble and go to trial and he seized on the opportunity to plead guilty to felony murder in exchange for 28 years 32 years at below the maximum that he faced I'm Just want to get my bearings here. The As to Deficient performance regarding the alibi. The people acknowledge that below we did concede deficient performance as to the alibi. However, our position on appeal is that petitioner has failed to establish or make a substantial showing of deficient performance because the record reflects the plea council acted reasonably And this court can affirm on any basis in the record. Here, the plea council would have considered based on what petitioner told him that the nature of the relationship with the alibi witness was that they were have been friends since childhood, and she was the mother of his child. Council would have had an obvious concern about her credibility and the fact that it could damage the defense. So, and Council didn't even need to talk to her based on what petitioner has stated the credibility issue with this alibi witness would have been evident and Council had an obligation not to damage the defense would have evaluated and determine that the value of this alibi witness would be outweighed by petitioners inculpatory statement. Petitioners also failed to make a substantial showing that plea council was ineffective for failing to investigate detective sound of all Disciplinary history and impeach him with it at the hearing on petitioners motion to suppress statement. Petitioner has failed to explain how this disciplinary history would have been admissible against detective sound of all at that hearing. Because remember at that hearing defense counsel was arguing that it was detective airs, who was emotionally abusive mentally coercive to petitioner before petitioner gave his statement. It wasn't about detective sound of all yes there was testimony about detective sound of all his role, but what petitioner was arguing What defense counsel was arguing there was it was detective airs and and Council said, yeah, he pushed him down onto the bench and petitioner hit his head, but we're not actually arguing any physical physical coercion. We're saying that detective airs got that statement using mental coercion. So we have to look at what was being argued at the hearing now petitioners asserting that we should look he's flipping it. He's saying, really, the issue is detective sound of all and physical coercion. That's not what was being argued at the hearing. So this would not have been admissible at that hearing as the court noted. The other thing is that these cases are too remote in time for one petitioner statement was taken the Federal case was 17 years prior and the police board case was eight years prior and they They were not involving someone in custody and it wasn't involving a statement, but because this for those reasons, the this Disciplinary history for detective sound of all would not have been a miss admissible at that hearing. The other thing is that There's also the fact that petitioner has failed to show that Council had Council gone to investigate detective sound of all disciplinary hearing that detective that the Excuse me, that plea Council would have discovered admissible evidence of detective sound of all Disciplinary history petitioner failed to show that. And for that reason, the claims about detective sound of all fail. Finally, petitioner. Excuse me, post conviction Council substantially complied with the Supreme Court rule 651 C and petitioner has not rebutted the presumption of reasonable assistance. Council filed the certificate after reviewing the plea proceedings and the pro se petition communicated with petitioner and filed an amended petition. So it's presumed that Council provided reasonable assistance. If we look at the record Council could have reasonably determined that the Whitfield MSR claim was without merit, where the trial court provided an imperfect admonishment that substantially complied with rule 402 a As Council noted the court after petitioner stated he understood the plea and that he was accepting 28 years and that the and was advised of the sentencing range of a minimum of 20 years and a maximum of 60 years with three years MSR So the court did provide an imperfect admonishment that substantially complied with rule 402 a and Excuse me, the court was not required to provide an ideal admonishment as noted in Illinois Supreme Court case people versus Morris. And Council referred to the other cases that Council cited and I believe Daniels was actually decided before Morris and the other case. Cites Daniels. So we have to look at the fact that Illinois Supreme Court has said that it would be nice. It would be ideal if there would be an explicit link Between the period of MSR and the term for which the plea is and that the petitioner is accepting the plea, but it's not required an imperfect admonishment. Is substantial compliance with rule 402 a For those reasons petitioners failed to rebut the presumption of reasonable assistance in this case. Any questions. None for me. Council. The, the record demonstrates that the defendant filed a motion to view the videos of the co defendants statements before the trial happened, but an emotional is granted. Can you hear me. Yeah, I'm just wondering, you said before the trial happened. There was no trial here. Well, before the plea. I'm going to say, Okay, yes. But there's, I can't find anything that demonstrates that he actually did see the videos. That that petitioner viewed them. Oh no petitioner actually testified at the motion at the hearing on the motion to suppress his statement petitioner actually testified consistent with detective errors and detective sound of all that he in fact viewed all four of the others inculpatory statements and he tested. Yes, with detective errors and detective sound of all, and he said that after viewing those four videos in which those people made inculpatory statements, and some said that he was the shooter, that that's why he wanted to make the statement, and he wanted to tell what was true and what was not. Okay, I don't think that's my question. My question is, okay, the videos with the benefit of his defense counsel before the plea. I am not certain your honor that the record reflects that I know there's a motion that was granted that he should be able to see the videos with his counsel, but I can't find anything that says that he did. When he was at the station, but did he see them after you got an attorney, and after he was while he was in jail waiting for the, the plea deal. I'm not certain of that your honor. Thank you, Justice I'm sorry. I'm not certain of that. Chris you may go ahead. Chris apologize your honor just unmuting again. Quickly to address the state's arguments regarding culpable negligence. I want to contrast this case with Davis and Jarrell which are much longer periods than this case, and in those, there was no explanation for why there was a lack of culpable negligence here and in the cases cited in our briefs, where there has been a finding of a lack of culpable negligence, there are similar explanations as to what Demonta gave here and just to correct the state. Once January, 2011 occurred, then Demonta was trying to get his records as Justice Patrinsky already highlighted that in March, 2011 emotion was filed he thereafter got them and then he explains he began drafting his petition. Again, the state has filed a motion dismiss in this case they're assuming the validity and the veracity of the claims in the affidavits in the petition. Had they wanted to contest that they should have just proceeded to an evidentiary hearing. And that's what should occur. As Upshaw highlights if there is a debate, if there's a credibility contest on culpable negligence that occurs in the trial court at an evidentiary hearing the state did not provide any reason why this court should not follow Wilburn on the similar timeline. You know, there was 16 month delay here, it's even less if we figure out that he's drafting his petition in the spring of 2011 of April. So, again, I think Wilburn points this court in the right direction as to a finding of lack of culpable negligence at the second stage. As to the alibi claim, the Hall standard governs prejudice and the state has pointed this court in no direction as to why a plausible alibi defense, which of course by assuming the veracity of the affidavits from Andrea and Demonta the state has done by following emotion dismiss. The state's played no case that a plausible alibi defense does not meet the Hall prejudice standard at the second stage. Of course it does. Regarding deficient performance again by filing emotion dismiss the state assume the truth of the affidavits here. Trial counsel has never investigated Andrea and I have to correct the state on this. The cases which state that family member friendship and whatnot matters for calling a witness not for failing to investigate a witness trial counsel in order to provide constitutional effective performance must interview the witness and investigate to determine the credibility of that witness. Finally, turning to the abuse allegations here, Whirl and Tyler and Jake's make standing by relevant for impeachment purposes. The mere fact that Sandoval who had been previously abusive to arrestees here this time was just verbally abusive and didn't commit the physical abuse. It all goes to impeachment and the relevance and what makes it relevant in this matter. Finally, I believe the FOIA request was made by post conviction counsel and easily turned up the 1997 allegations regarding the juvenile. The 1987 violations are a matter of published decision. So that was easily found to by post conviction counsel and of course trial counsel had he done a modicum of investigation into Sandoval and errors would have discovered Sandoval's prior abuse history. If you're honest, have no further questions. We asked for the leaf request in the briefs and thank you again for your time today. Thank you. You both made very presentable arguments. We appreciate your time and the work you put into this case. Chris, I only make since I saw you twice today that you are very precise and you're arguing I'm impressed. Well, again, both. Thank you very much.